[S. F. No. 5124. In Bank.—May 11, 1910.]

# O. E. CARLSON, Appellant, v. MAURICE SHEEHAN, Respondent.

BUILDING CONTRACT—PREVENTION OF PERFORMANCE—ACTION FOR VALUE OF WORK AND MATERIALS—PLEADING—COMMON COUNT.—The rule that a building contractor, in order to recover, must plead the special contract, the sum agreed to be paid, the performance by himself, and non-payment by defendant applies only where the contract has been or ought to have been fully performed by the plaintiff; but if performance has been prevented by defendant's fault, the plaintiff may sue upon the common count to recover the value of the work and labor done which remain unpaid.

ID.—GENERAL RULE REQUIRING PERFORMANCE—EXCUSES FOR PERFORMANCE.—Where a person agrees to do a thing for another for a specified sum of money to be paid on full performance, he is not entitled to any part of such sum until he has done the thing he agreed to do, unless full performance has been excused, prevented, or delayed by the act of the other party, or by operation of law, or by the act of God or the public enemy, as specified in section 1511 of the Civil Code.

ID.—PREVENTION OF PERFORMANCE BY PAYOR—RIGHT OF PAYEE TO FULL PAYMENT.—If performance *is* prevented by the act of the party

who is to make the payment, the person agreeing to do the thing is entitled, under section 1512 of the Civil Code, to payment as for full performance.

ID.—BREAKING OF INTERMEDIATE COVENANT—RESCISSION—QUANTUM MERUIT.—If the payor breaks an intermediate covenant of an executory agreement, the other party may treat the entire contract as rescinded, and recover in *quantum meruit* the value of the work he has done under it.

ID.—ABSENCE OF PREVENTION BY OWNER—RESCISSION BY CONTRACTOR NOT JUSTIFIED.—Where, under the facts appearing, nothing was done or omitted by the owner of the building which prevented or excused the contractor from completing the contract, he was not justified in rescinding the contract on the ground of prevention and suing on the common count.

ID.—EXECUTION OF CONTRACT BEFORE COMPLETION OF GRADING—SECURITY AGAINST FALL OF HIGH BANKS NOT EXACTED—PRESUMPTION.— Where the contract was executed before the grading of the lot was completed, and the character of the soil and the danger of the caving in of high banks on each side of the lot was apparent, and no stipulation was exacted for a retaining wall, or the sloping of the banks, so as to prevent injury to the house, the contractor must be presumed to have undertaken the performance of the contract at his own risk of interference therewith by landslides from the adjoining lots.

ID.—IMPLIED OBLIGATION OF OWNER TO REMOVE FALLEN EARTH PERFORMED—DUTY TO REPAIR HOUSE NOT IMPLIED.—Where the owner of the lot  performed any implied duty to remove extraneous earth falling upon his land, but where he made no express agreement that he would repair any damage resulting to the house from a slide, no such obligation rested upon him by implication of law.

ID.—OBLIGATION OF CONTRACTOR TO COMPLETE BUILDING—EXPENSE NO EXCUSE—PERFORMANCE NOT EXCUSED UNLESS PRACTICALLY IMPOSSIBLE.—The obligation of the contractor to perform his contract to complete the building was not excused because of damage thereto to the extent of four hundred dollars from a landslide. He could not be absolved from the obligation to perform his contract by any natural obstacles intervening, unless they rendered performance practically impossible. Mere difficulty, or unusual or unexpected expense would not excuse him. The expense required to restore the building was necessary to complete the building contract, and the contractor had no right to require or demand that the owner should pay him for it, and the refusal of the owner to do so was no excuse for non-completion by the contractor.

ID.—DECLARATION BY OWNER AS TO RESTORATION OF BUILDING—MEANING.—A declaration by the owner after the injury to the building by a landslide, to the effect that he would not let the contractor go on with the work unless he restored the building to its proper condition as called for by the contract, is to be understood, in view of the contractor's refusal to do so unless the owner paid therefor, as

meaning that the owner would not consider the building completed nor accepted unless it was so restored, at the contractor's expense.

ID.—NONSUIT—DECLARATION BY OWNER AFTER CONTRACT.—VIOLATED CONTRACT TO SLOPE BANKS—NON-RELIANCE BY PLAINTIFF.—Where the owner, after the execution of the contract, and after the grading · of the lot declared that he had contracted with the graders to slope off the banks on each side, and they had refused to do it because the contract was not in writing, such declaration is no objection to a nonsuit by the contractor for failure to perform his contract, where nothing appears to show that the contractor signed the contract in reliance upon or in consideration of any agreement by the owner to slope off the banks.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. E. P. Mogan, Judge.

The facts are stated in the opinion of the court.

tum Suden & tum Suden, for Appellant.

Sullivan & Sullivan, for Respondent.

SHAW, J.—Plaintiff brought this action to recover the sum of $1715.00, alleged to be the balance due and unpaid for work done and materials furnished by plaintiff for defendant in constructing a building at defendant's special instance and request. After the plaintiff had introduced his evidence upon the trial the court, on motion of the defendant, ordered a nonsuit. The plaintiff appeals from the judgment thereupon rendered. .

The plaintiff and defendant entered into a contract whereby the plaintiff agreed to erect a building upon a lot belonging to the defendant for the sum of $3680. The plaintiff completed the building in part only and the defendant paid him twenty-one hundred dollars upon the contract. The remainder was to be paid on and after completion. The cost of finishing the uncompleted part of the building would have been about five hundred dollars. The claim of the plaintiff is that he was prevented or excused from completing the building according to the agreement by the conduct of the defendant. The object of the suit is to recover the difference between the value of the work done at the contract rate and the amount paid by the defendant.

We do not think there is any merit in the contention of the respondent that a recovery cannot be had upon the common count for the value of the work and material, and that the plaintiff should have averred the special contract, the sum agreed to be paid, the performance by himself, and non-payment by defendant. Such a rule may apply where a contract has been performed by the plaintiff, but where complete performance has been prevented by the fault of the defendant; the plaintiff may sue for the value of that which he has done under it.

The lot on which the building was erected was twenty-five feet in width fronting on Market Street and one hundred and twenty-five feet in depth. The building was a two-story frame structure covering the entire width of the lot and running back seventy feet. The defendant did not own the adjoining lot on either side. At the time the work was begun on the contract the lot had been graded down lower than the natural surface of the adjoining lots, leaving high vertical banks of earth on each side. These banks were unprotected by retaining walls or otherwise, and were liable to slide down upon the lot and against any building erected thereon, in case of heavy rains. The contract was made on September 2, 1906, and plaintiff began the work about the first of October. At the time of making the contract the defendant was grading the lot to prepare it for the building. Plaintiff saw the condition of the banks on each side and knew the character of the soil. He did not believe the banks would stand without support, and there was some negotiation between him and defendant about putting in a concrete retaining wall four feet high to protect them from caving or sliding in upon the building, but there was no agreement regarding it. It was agreed that plaintiff should put in a wooden bulkhead in the rear five feet in height. The defendant told plaintiff that he had contracted with the graders to slope off the banks on each side, but that the contract was not in writing and they had refused to do it. Counsel for plaintiff earnestly insist that this was said at the time of executing the contract and that it constituted an inducement or consideration therefor from which an agreement by the defendant to slope off the banks would be implied. Giving to the evidence the full force which is to be attributed to it on a motion for nonsuit, we cannot so construe it. The

conversation referred to, in which this was said, occurred after the contract was signed and before the work was begun. The statement itself indicates that it was made after the lot was graded and the context confirms this conclusion. There is nothing to show that Carlson signed the contract in reliance upon, or in consideration of, any agreement of Sheehan to slope off the banks.

The work was begun by Carlson with full knowledge of the conditions and without any protest or objection by him on account of any danger of a landslide from the adjoining banks. When the building was nearly finished there were heavy rains which caused the said banks to slide in on the building, crushing in the sides thereof and damaging it to such an extent that it would require an expense of four hundred dollars to restore it to its former condition. The defendant thereupon undertook to clear away the earth so that plaintiff could complete the building and directed the plaintiff to stop further work until the earth was removed. This occupied several months. When it was done the defendant requested that plaintiff proceed with the work to completion. Plaintiff demanded that defendant pay the expense necessary to restore the building to the condition it was in before the slide occurred. The defendant refused to do this and thereupon the plaintiff refused to complete the building. The decision of the case depends on the question whether or not the plaintiff was justified in his refusal to go on with the work, under the facts stated.

Where a person agrees to do a thing for another for a specified sum of money to be paid on full performance, he is not entitled to any part of the sum until he has himself done the thing he agreed to do, unless full performance has been excused, prevented, or delayed by the act of the other party, or by operation of law, or by the act of God or the public enemy, as specified in section 1511 of the Civil Code. If performance is prevented by the party who is to make such payment, the person doing the things is entitled to payment as for full performance. (Civ. Code, sec. 1512.) And if one party breaks an intermediate covenant of an executory agreement, the other party may treat the entire contract as rescinded and recover in *quantum meruit* for the value of the work he has done under it. (*Cox* v. *McLaughlin,* 76 Cal. 60, [9 Am. St. Rep. 164, 18 Pac. 100].)

There was nothing done by Sheehan in the present case which had the effect of preventing Carlson from completing the building, or which justified a rescission by him. At the time the contract was signed the grading was in progress. There is no evidence that Sheehan then agreed that he would have the banks of the adjoining lots, which he did not own, sloped off so as to prevent the earth from falling on his own lot, or from sliding against the building to be erected thereon. He would have no right to do that; and his only lawful means of protecting his lot, without the consent of the adjoining owners, was to erect a retaining wall or bulkhead upon his own side of the boundary line. Carlson saw the situation in which the lot would be left when the grading was done, and he knew the character of the soil. With this knowledge he executed the contract without exacting any stipulation for his protection from the consequences of any caving of the banks which might occur during the erection of the building. Before he began the work he saw that the banks were vertical and Sheehan explained the reason, but did not agree to do anything to avoid or prevent the danger. Carlson must be presumed to have undertaken the performance of the contract at his own risk of interference by landslides from the adjoining lots. It may be admitted that there was an implied agreement that Sheehan would complete the grading to the desired level and that he was bound to remove the earth which, from natural causes, fell upon the lot after the work was begun and interfered with its completion. If this obligation existed, he discharged it by removing the fallen earth. But he had made no agreement that he would repair any damage to the building from a slide or cave occurring while the work was in progress. There was no such obligation resting upon him by implication of law. Carlson was bound to perform his contract and he was not absolved therefrom by the natural obstacles intervening, unless they rendered performance practically impossible. Mere difficulty, or unusual or unexpected expense would not excuse him. (9 Cyc. 625; *Klauber* v. *San Diego St. Co.*, 95 Cal. 357, [30 Pac. 555]; *Wilmington etc. Co.* v. *O'Neil*, 98 Cal. 5, [32 Pac. 705]; *Sample* v. *Fresno F. Co.*, 129 Cal. 228, [61 Pac. 1085]; *Wilson* v. *Alcatraz A. Co.*, 142 Cal. 188, [75 Pac. 787].) The only reason given by Carlson for refusing to go on was that after the landslide Sheehan would not agree to

allow him extra compensation for the expense he would be put to in restoring the building to its previous condition. This restoration was necessary to complete his own undertaking and he had no right to demand that Sheehan should pay him for it. The refusal of Sheehan to do so was no excuse for non-completion by Carlson.

It is claimed that further performance was excused by reason of a statement by the defendant, after the injury, to the effect that he would not let Carlson go on with the work unless he restored the building to its proper condition as called for by the contract. It is plain that all that Sheehan meant by this was that he would not consider the building completed nor accept it unless it was so restored. Carlson himself, on cross-examination, fully explained that the only reason why he did not complete the building was that Sheehan would not restore the building himself nor pay the cost thereof.

The district court of appeal for the first district to which this case was transferred, affirmed the judgment. A transfer was then made to this court to further consider the evidence concerning the asserted agreement or obligation of Sheehan to slope off the adjoining banks. We are satisfied that both the district court and the superior court were correct in their conclusions.

The judgment is affirmed.

Angellotti, J., Sloss, J., Lorigan, J., Henshaw, J., and Melvin, J., concurred.