[S. F. No. 6935. Department One.—July 6, 1916.]

## C. N. P. AHLGREN, Respondent, v. JULIA A. WALSH, Appellant; WILLIAM J. WALSH, Defendant.

BUILDING CONTRACT — INSTALLMENT PAYMENTS — ARCHITECT'S CERTIFICATE AS TO AMOUNT DUE.—Under a clause in a building contract, the price of which was payable in installments as the work progressed, providing that when each installment shall become due, a certificate in writing shall be obtained from the architect, stating that the installment is due and the amount then due, such certificate must be given before the installment becomes presently payable and before any right of action therefor accrues.

ID.—MEANING OF WORD "DUE."—The word "due" may mean either *owing* or *payable*, according to the context.

ID.—DESTRUCTION OF BUILDING BY FIRE BEFORE COMPLETION—CONTRACT CONTROLS RIGHTS OF PARTIES—ABANDONMENT—PLEADING.—Where a building to be erected is partially constructed and is destroyed by fire before full completion, and the contract is entire and contains

no express provision regarding the rights of the parties in that contingency, if the parties do not rescind or abandon, but stand upon the contract, it controls their rights. An abandonment, if relied upon by the contractor as the foundation of a recovery from the owner, must be alleged.

ID.—RIGHTS OF OWNER AND CONTRACTOR UPON DESTRUCTION OF BUILDING BY FIRE.—In such a case, the contractor and the owner each must perform his part of the contract. If the whole price is due upon completion, the contractor must complete it before he can lawfully demand payment. If it is payable in installments during the progress of the work, he cannot recover an installment earned but not paid at the time of the fire, until the reconstruction has proceeded to the stage necessary to make it due. He must stand the loss resulting from the fire, and must replace at his own expense the structure that is destroyed. When he has done so, he may recover the full contract price. Such destruction of the structure already made does not excuse him from completing performance of the contract, nor does it prevent performance within the meaning of section 1511 of the Civil Code.

ID.—RIGHT OF CONTRACTOR TO EARNED BUT UNPAID PROGRESS PAYMENT. If there are progress payments on the work which are due, or earned, but unpaid, at the time of the fire, the contractor cannot rightfully demand payment thereof, or recover the same, until he has rebuilt the structure to the point where, by the terms of the contract, the work required to make the particular payment due is again performed.

ID.—CONTRACT APPORTIONING LOSS UPON DESTRUCTION OF BUILDING BY FIRE—INSTALLMENT EARNED AND UNPAID IS "DUE"—RIGHT OF CONTRACTOR TO RECOVER.—Where the contract contained a further independent clause providing that in the event the building should, before completion, be wholly destroyed by fire, then the loss occasioned thereby shall be sustained by the owner to the extent that he has paid installments thereon, or that may be due under such preceding clause, and the loss occasioned thereby and to be sustained by the contractor, shall be for the uncompleted portion of the work upon which he may be engaged at the time of the loss and for which no payment is yet due under such preceding clause, an installment earned and unpaid at the time of the total destruction of the building by fire is "due" within the meaning of such clause apportioning the loss, notwithstanding the failure of the architect to issue a certificate to that effect, and the contractor is entitled to recover the amount thereof without reconstructing the whole or any portion of the building, and without securing the issuance of the architect's certificate therefor.

ID.—TOTAL DESTRUCTION—BURNING OF BUILDING AS RESULT OF EARTHQUAKE.—The complete destruction of the building while in course of construction by a fire caused by an earthquake which partially de-

stroyed it, was a total destruction within the meaning of the clause apportioning the loss in the event of its total destruction by fire or earthquake. It is immaterial that an interval of a day elapsed between the earthquake which started the fire and the burning of the building.

ID.—ACT OF GOD—FIRE.—Fire does not come within the definition of the term "act of God," unless it is caused by some superhuman agency.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order refusing a new trial. W. M. Conley, Judge.

The facts are stated in the opinion of the court.

Garret W. McEnerney, and Andrew F. Burke, for Appellant.

Denson, Cooley & Denson, for Respondent.

SHAW, J.—The defendant, Julia A. Walsh, appeals from the judgment, and also from an order denying her motion for new trial.

The action was begun to recover an installment of a contract entered into between the plaintiff and the defendants, whereby the plaintiff agreed to construct certain portions of a nine flat frame building for the defendants upon a lot in San Francisco. The contract was executed on October 25, 1905. The contract price was $23,763, to be paid "at times and in the manner following, to-wit: First:—$1000 when concrete foundations are built. Second:—$2400, when the frame is up. Third:—$2200 when building is enclosed and roof completed. Fourth:—$4000 when brown coat of mortar is on. Fifth:—$2500 when the plastering and outside mill work is finished." The remainder was payable in further installments until the completion. They are not important to our discussion. The installment sued for was the fifth which, by the part of the contract just quoted, was to be paid "when the plastering and outside mill work was finished." To this clause, however, there was a proviso, as follows:

"Provided that when each payment or installment shall become due, and at the final completion of the work, certificates in writing shall be obtained from said architect, stating that the payment or installment is due or work completed, as the

case may be, and the amount then due; and the said architect shall at said times deliver said certificates under his hand to the contractor, or, in lieu of such certificate, shall deliver to the contractor, in writing, under his hand, a just and true reason for not issuing the certificates, including a statement of the defects, if any, to be remedied, to entitle the contractor to the certificate or certificates. And, in the event of the failure of the architect to furnish and deliver said certificates, or any of them, or in lieu thereof the writing aforesaid, within three days after the times aforesaid, and after demand therefor made in writing by the contractor, the amount which may be claimed to be due by the contractor and stated in the said demand made by him for the certificates, shall, at the expiration of said three days, become due and payable, and the owner shall be liable and bound to pay the same on demand. In case the architect delivers the writing aforesaid in lieu of the certificate, then a compliance by the contractor with the requirements of said writing shall entitle the contractor to the certificate.''

The contractor proceeded with the performance of the work and had earned and received four installments provided by the contract, amounting to nine thousand six hundred dollars, and had also finished the plastering and outside mill work. This work was completed and the fifth installment earned on the 17th of April, 1906, at noon. Early the next morning the earthquake of 1906 occurred whereby the structure was greatly damaged. It was immediately followed by the great fire, which, on the next day, completely destroyed the building. The architect had not then made a certificate that the fifth installment had been earned by the finishing of the work therein specified and was due and payable. About thirty days afterward the plaintiff demanded that the architect issue the certificate as required by the contract, and also demanded of the defendants payment of said sum of two thousand five hundred dollars. The architect refused to give the certificate and the defendants refused to pay the installment.

The effect of the fifth clause of the contract, taken alone, and with respect to the conditions of payment, may best be shown by paraphrasing its provisions so as to connect those which relate to the fifth installment, thus: "The owner agrees, in consideration of the performance of this agreement by the

contractor, to pay to said contractor $23,763.00, at times and in the manner following: Fifth:—$2500, when the plastering and outside mill work is finished, *provided,* that when each installment shall become due, a certificate in writing shall be obtained from said architect, stating that the installment is due and the amount then due." The second clause provided that the contractor was to do the work "under the direction and supervision and subject to the approval of said architect."

Upon such a contract there could be no doubt that the certificate of the architect must be given before the installment becomes presently payable and before any right of action therefor accrues. (*Coplew* v. *Durand,* 153 Cal. 279, [16 L. R. A. (N. S.) 791, 95 Pac. 38], and cases cited.) If there were no other provision in the contract the plaintiff could not recover.

The complaint does not allege that the parties, after the fire, mutually abandoned the contract, so far as reconstruction of the building is concerned. The evidence indicates that they did, but in the absence of an allegation, such abandonment, if it occurred, cannot be made the foundation of a recovery by plaintiff.

The general rules governing the rights of the parties to a building contract, where the building to be erected is partially constructed and is destroyed by fire before full completion, in cases where the contract is entire and contains no express provisions regarding their rights in that contingency, are not seriously controverted. If, in such a case, the parties do not rescind or abandon, but stand upon the contract, it controls their rights. The contractor and the owner each must perform his part of the contract. If the whole price is due upon completion, the contractor must complete it before he can lawfully demand payment. If it is payable in installments during the progress of the work, he cannot recover an installment earned but not paid at the time of the fire, until the reconstruction has proceeded to the stage necessary to make it due. He must stand the loss resulting from the fire and must replace at his own expense the structure that is destroyed. When he has done so, he may recover the full contract price. He is not excused from completing the performance of the contract by the fact that the fire has destroyed the structure already made. It is nevertheless

possible for him to begin again and rebuild the entire building. Such destruction does not prevent performance within the meaning of section 1511 of the Civil Code. (*Wilmington T. Co.* v. *O'Neil,* 98 Cal. 5, [32 Pac. 705] ; *Barrere* v. *Somps,* 113 Cal. 97, 104, [45 Pac. 177, 572] ; *Sample* v. *Fresno Flume etc. Co.,* 129 Cal. 222, 228, [61 Pac. 1085] ; *Wilson* v. *Alcatraz etc. Co.,* 142 Cal. 182, [75 Pac. 787] ; *Polack* v. *Pioche,* 35 Cal. 416, 422, [95 Am. Dec. 115] ; 30 Am. & Eng. Ency. of Law, 1249; Civ. Code, sec. 1439.) There are cases which hold that upon such a contract if the contractor neglects to complete the performance after such destruction, the owner may recover from him the installments which had been paid prior to the destruction. (*Green* v. *Wells,* 2 Cal. 584; *Tompkins* v. *Dudley,* 25 N. Y. 272, [82 Am. Dec. 349].)

From these principles it logically follows that if there are progress payments on the work which are due, or earned, but unpaid, at the time of the fire, the contractor cannot rightfully demand payment thereof, or recover the same, until he has rebuilt the structure to the point where, by the terms of the contract, the work required to make the particular payment due is again performed. As we have said, these principles apply where the contract contains no provisions declaring the rights of the parties in case of the destruction of the partly completed building. The contract sued on contained a provision on this subject. It is on this provision that the plaintiff relies to support his action. It is as follows:

"Twelfth: In case said work herein provided for should, before completion, be wholly destroyed by fire, defective soil, earthquake, or other act of God which the contractor could not have reasonably foreseen and provided for, then the loss occasioned thereby shall be sustained by the owner to the extent that he has paid installments thereon, or that may be due under the fifth clause of this contract; and the loss occasioned thereby and to be sustained by the contractor, shall be for the uncompleted portion of said work upon which he may be engaged at the time of the loss, and for which no payment is yet due under said fifth clause of this contract.

"In the event of a partial destruction of said work by any of the. causes above named, then the loss to be sustained by the owner shall be in the proportion that the amounts of installments paid or due bears to the total amount of work done and materials furnished, estimated according to said contract

price, and the balance of said loss to be sustained by the contractor."

The appellant claims that the case is one of partial destruction, only, and is governed by the second part of the twelfth clause, which, he contends, requires the contractor to repair the earthquake damage as a condition precedent to the accrual to him of a right to demand and receive the fifth installment. We do not determine whether such repair was a condition precedent or not, under that part of the clause, for we think it was a case of total destruction provided for by the first part of the twelfth clause. It was proven that the earthquake shook off the plastering and left the walls out of plumb. If no fire had followed, doubtless it would have been a case of partial destruction. But the earthquake started fires, the flames spread and continued for several days, and on the day following the earthquake they reached the building in question and entirely destroyed it. It then became a case of total destruction. We are unable to see any force in the theory that the interval of a day between the primary cause of the destruction and the ultimate result of complete destruction, operated to limit the contractor's rights to those provided in case of partial destruction, or to prevent it from becoming a case of total destruction when such total destruction took place. The right to recover this money depends on the provisions regarding total destruction.

Assuming for the present that the fifth installment was due within the meaning of the provision regarding total destruction, the question arises whether, in view of the principles we have stated, the contractor is entitled to payment thereof before he has so far reconstructed the building that the "plastering and outside mill work" is again finished. The appellant earnestly insists that this question should be answered in the negative, but we think the contract requires an affirmative answer. The fifth clause provides for the payments to be made in the regular performance of the contract, and it makes the performance of a specified part of the work a condition precedent to the payment of each installment of the price. The twelfth clause does not relate to the regular performance of the contract, but to the division of the damages caused by a total destruction of partially completed work. It is an independent provision, and the apportionment of the

loss from total destruction as there specified is not declared to be dependent on further prosecution of the work, or on the reconstruction of the whole or any part of the building. It provides that in case of a total destruction the owner shall sustain a certain loss. This means that he shall sustain it at that time and upon the happening of that event, and not that he shall sustain it at some future time, or upon the happening of some additional event. A part of this loss which the owner must thereupon sustain, it declares, is the loss of any installment of the price which was due and unpaid at the time of the destruction. Now, so long as he delays payment thereof he suffers no such loss. In order to make the clause of any effect as to that part of the loss he must make the payment to the contractor. Then and then only does he sustain the loss. And as the loss is to be sustained by him upon the happening of a total destruction, and not afterward, or upon any other event, it necessarily follows that, upon such destruction, he immediately becomes liable to the contractor for such unpaid installment, regardless of the further performance of the contract by the contractor, the reconstruction of the building, or of the question whether or not there follows a mutual abandonment of the contract.

We are of the opinion that the fifth installment was "due" at the time of the fire, within the meaning of the clause apportioning the loss on total destruction, notwithstanding the failure of the architect to issue a certificate to that effect. The clause purports to apportion the entire loss. That which the owner is not to bear is to be sustained by the contractor. The latter's loss is to be only "for the uncompleted portion of said work upon which he may be engaged at the time of the loss, and for which no payment is yet due under said fifth clause of this contract." This "uncompleted portion" of the work obviously does not include the "plastering and outside mill work" to be done in order to earn the fifth installment, for all of that work was completed before the fire occurred and he was not then "engaged" upon it. It must, therefore, refer only to work done in the further prosecution of the contract, after the finishing of the plastering and outside mill work, and which had not then progressed far enough to earn the succeeding installment. The final words, "and for which no payment is yet due under said fifth clause of this contract," from their position in the sentence and their

grammatical relation, can refer only to the "uncompleted portion of said work" designated by the first part of the clause fixing the contractor's loss, and hence they do not include the completed work by which the fifth installment was earned. The corresponding meaning and application should be given to the similar phrase in the part fixing the owner's loss, for the entire clause should be harmonized, if reasonably practicable. Unless, therefore, the provision of the fifth clause requiring the issuance of the architect's certificate in order to render an earned installment due and payable overrides the meaning and grammatical construction of this part of the twelfth clause, the fifth installment must be held to have become due at the time of the fire and to be included in the loss to be sustained by the contractor.

Certain statutory rules of interpretation here apply, and by resort to them the two clauses may be reconciled. A contract must receive such an interpretation as will make it reasonable and capable of being carried into effect, if it can be done without violating the intention of the parties (Civ. Code, sec. 1643), and so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other. (Civ. Code, sec. 1641.)

It would be impossible for the architect to examine the work after a total destruction to determine whether or not the work necessary to make a particular installment due had been completed. If such certificate were necessary to the apportionment of the loss, the contractor's rights in the matter would not depend on the work he had done and the money he had justly earned before the destruction, but upon his diligence in demanding a certificate and the architect's industry in inspecting the premises and his promptness in making out and issuing the certificate. In the present case the fifth installment was earned at so short a time before the fire that even great diligence would scarcely have brought forth a certificate. Such contingencies are not unusual. To put that loss on the contractor in such a case would be unjust. For the destruction did not relieve the contractor from the performance of the contract. It stipulates that delay caused by acts of God shall be added to the time allowed to the contractor for performance. Hence the delay caused by the earthquake did not excuse performance. Fire does not come within the definition of the term "act of God," unless it is

caused by lightning or some other superhuman agency. (*Fay v. Pacific Imp. Co.,* 93 Cal. 253, 262, [27 Am. St. Rep. 198, 16 L. R. A. 188, 26 Pac. 1199, 28 Pac. 943] ; *Pope v. Farmers' Union etc. Co.,* 130 Cal. 141, 439, [80 Am. St. Rep. 87, 53 L. R. A. 673, 62 Pac. 384] ; *Polack v. Pioche,* 35 Cal. 416, 423, [95 Am. Dec. 115] ; *Chidester v. Consolidated D. Co.,* 59 Cal. 197, 202; 1 Corpus Juris, 1177.) But the fire did not render performance actually impossible, in point of law, although the pleadings admit that it did in point of fact, and, as we have seen, the destruction by that cause did not excuse performance. The owner, therefore, had the right to demand the reconstruction of the work destroyed and the completion of the building as contracted for. If he had made such a demand and the contractor had proceeded accordingly, the result would be that the contractor would lose the money he had justly earned by his first performance. In case of a fire he might be deprived thereof by the failure of the architect to promptly issue a certificate, or by the impossibility of obtaining it in time, and altogether without fault on his part. A contract containing express provisions to that effect and making such results probable would be condemned at once as absurd and unreasonable. It is not to be supposed that the parties would have agreed to such terms if they had been clearly expressed. There is no express declaration in the fifth clause that the issuance of a certificate is a condition precedent to payment of an installment. The language to that effect, though so interpreted by many decisions, is neither express nor clear. It is difficult to believe that the parties intended or understood that this proviso should apply to the twelfth clause.

The contract, as a whole, does not require that interpretation. The word "due," upon which this claim of the owner is founded, as applied to a debt or obligation to pay money, does not always mean that the money is then immediately payable. It may be so used, but it often merely denotes the idea of a complete debt, an existing obligation, or money fully earned, but not payable until a future time or until the happening of another event. (Webster's Dictionary.) It is used in the first sense in the fifth clause of this contract. It first declares that "when" the plastering and mill work "is finished'' the owner shall pay the contractor two thousand five hundred dollars. Then comes the proviso "that when

each payment or installment *shall become due,* a certificate shall be obtained that the "installment *is due"* and stating the amount "then due." The first phrase of the proviso uses the word "due" to describe money earned, but not necessarily immediately payable. The installment must "become due" before any certificate is to be obtained. The event of its becoming due must precede the issuance of a certificate that it *is* due. The statement that it *is* due is of a thing that has already happened. The procuring of a certificate is, by the proviso, made a condition of its becoming payable but not of its becoming due. That this distinction between being merely due, that is, fully earned, or owing, and being "due and payable," was understood and intended, is shown by the succeeding declaration that when, on demand, the architect fails to issue the certificate within three days, the installment shall then "become due and payable." This implies that such installment was *due* before it became payable. It is also shown by the statements in the sixth clause that the owner shall be liable for damages caused by his delay in paying any installment after it "shall become due and payable," and that such delay might be held to prevent performance, if continued for more than five days after an installment had "become due and payable." They were careful to provide that an installment should not only be "due," but also "payable," before the owner could be in default. From all these considerations, and inasmuch as the twelfth clause relates to actual work done and actual loss suffered from its destruction and not to formal proofs of completion, we think the reasonable interpretation is that in the twelfth clause the word "due" designates an installment earned and unpaid, whether a certificate had been issued therefor or not. With this interpretation the clause is given an effect that is just, reasonable, and definite.

This question was decided by the district court of appeal in *Hettinger* v. *Thiele,* 15 Cal. App. 1, [113 Pac. 121]. In that case the facts were the same as in the case at bar, except that the fifth clause, instead of declaring that certain sums were to be paid when certain parts of the work were finished, provided that seventy-five per cent of the price should be paid as the work progressed. It contained the same proviso requiring the certificate from the architect before money for work done was payable. In that respect its language was identical

with the contract here sued on, as also was the twelfth clause. It was held that the loss payable by the owner, upon a total destruction, included the amount due for the work done at that time, and that the issuance of a certificate by the architect was unnecessary to the accrual of a cause of action therefor. A petition for rehearing thereof was denied by the supreme court.

Our conclusion is that, under the twelfth clause of the contract, if there is a total destruction, the owner must sustain the loss of all installments of the contract price that were due at that time and which had then been paid by him, and also of any installment which had been earned and was then due, in the sense that it was *owing*, and which is not then paid, that in order to carry out the intent of the contract that he shall sustain the loss of such unpaid installment then earned, it is necessary that he shall pay the same to the contractor, and that neither the issuance of an architect's certificate therefor, nor the reconstruction of the building by the contractor to a stage where the installment would again be earned, are conditions precedent to the accrual of a cause of action in favor of the contractor against the owner for such installment.

The appellant cites the case of *Anderson* v. *Quick*, 163 Cal. 658, [126 Pac. 871], and insists that it, in effect, holds that the contractor, in case of total destruction, cannot, under the twelfth clause, recover any installment then due and unpaid unless he has reconstructed the building to a point where such installment will again be earned. The passage relied on as supporting this contention is as follows: "The owner is to sustain a part of the loss and this he does when, upon restoration of the building to a point where an installment becomes due, he is required to make duplicate payment of an installment already paid, or due and unpaid before the loss." In that case there was no installment due or unpaid. The action was for damages alleged to have been caused by the act of the owner in preventing the contractor from reconstructing the building after a partial destruction. The passage quoted is merely a part of the discussion of the question whether the conduct of the owner in refusing to meet the contractor to settle and adjust the loss arising from the partial destruction, was a legal prevention of the reconstruction of the building by the contractor. His position was that the

contract required that such adjustment should precede the reconstruction.   It was in answer to this position and in demonstrating that the contract did not so provide, that the language above quoted was used.   The passage, in effect, merely states that the owner does not actually sustain the loss until he has paid an installment the second time.   The question whether or not such payment of an installment unpaid at the time of the destruction could be enforced before reconstruction, was not involved in the case, and there was no intention to decide anything on that point.

The judgment and order are affirmed.

Sloss, J., and Lawlor, J., concurred.

Hearing in Bank denied.