[Civ. No. 3901.   Third Appellate District.—November 6, 1929.]

T. B. ORR, Respondent, v. W. J. FORDE, Appellant.

William P. Boland and Bernard G. Hiss for Appellant.

Rowan Irwin and Rollin Laird for Respondent.

FINCH, P. J.—The complaint contains two counts. In the first it is alleged that, pursuant to the terms of a contract between the parties, "plaintiff drilled a well to the depth of 940 feet, and that said well was drilled in a proper and skillful manner and was fully completed; . . . that said well . . . was received and accepted by said defendant"; that the defendant became indebted to the plaintiff in the sum of $400 "for the moving of the well-rigging rig onto said property" and in the further sum of $367.50 "for the perforating and finishing up of said well." In the second count it is alleged that the defendant is indebted to the plaintiff in the sum of $2,364.72 for "work and labor done, . . . for material furnished, . . . and for money advanced."

The answer denies, among other things, that the well was drilled in a proper and skillful manner or that the same was ever completed or accepted. The defendant also filed a cross-complaint for damages alleged to have been caused by the plaintiff's negligence in drilling the well.

The court gave the plaintiff judgment on the first count for the full contract price for a well 940 feet in depth and also for the amount proved on the second count and the defendant has appealed. The contract contains the following:

"The first party agrees to drill a well for second party on that certain land (describing it) at the place thereon to be designated by second party, and to sink such well thereon at least to a minimum depth of 300 feet, . . . such well to be started as 16 inch well and the same to be con-

tinued down of the same size as near as can be practically put down considering the exigencies that may arise, it being understood that in case the casing becomes stuck the size may be reduced so as to permit the putting in of casing the next regular size smaller; all upon the terms and conditions following:

"The sum of $3.25 per foot to be paid by second party for the first 300 feet and for further depths as hereafter stated; ½ of said $3.25 per foot to be paid upon the attaining of 300 feet, and the other ½ upon completion of said well.

"In consideration thereof second party agrees to pay first party . . . the sum of $400 for moving of rig into said property. Receipt of ½ is hereby acknowledged, and the other half thereof upon completion of said well; and the further sum of 50 cents per foot for each foot of the first 100 feet that said well may be drilled in excess of said minimum, and for additional depth, second party agrees to pay a price per foot in each succeeding one hundred feet increased by 50 cents per foot over the per foot price of that next preceding 100 feet (that is the per foot price in each additional 100 feet shall be 50 cents greater than the per foot price of the next preceding 100 feet); on the completion of each of said 100 feet one-half of the amount to be paid therefor shall be paid . . . and the balance thereof . . . on the completion of the well.

"After said minimum depth has been attained first party may refuse to put it down any deeper, and must cease to put it down any deeper if requested by second party. . . . First party agrees to perforate the casing at each and all water strata, and to bail and sand pump said well at the price of $35 per day . . . while engaged thereon, and second party agrees to pay first party therefor at said rate. . . . All work done hereunder by first party shall be done in good and workmanlike manner."

The court found:

"That pursuant to and under the terms and conditions of said contract, plaintiff drilled a well upon the lands of defendant, in accordance with said contract, to a depth of 940 feet, and in a proper and skillful manner, and that said well, after being so drilled, was accepted by defendant.

"That at the trial of said action, it was expressly stipulated by and between counsel for the respective parties, that there was due and owing from defendant to plaintiff the sum of $2,589.72, together with reasonable attorney's fees, subject to proof of the counterclaim set forth in defendant's cross-complaint.

"That plaintiff drilled said well in a careful, proper and workmanlike manner."

The court found that the allegations of the cross-complaint to the effect that the defendant was damaged by the negligence of the plaintiff in drilling the well are not true.

Appellant contends that the record does not support the finding as to the stipulation between counsel for the respective parties. Shortly after the commencement of the trial the plaintiff admitted that the defendant had made payments for which he had not been given credit. After a consultation between the attorneys for the parties, Mr. Laird, counsel for plaintiff, stated that there was a balance of $2,589.72 due from the defendant to the plaintiff. Thereupon the following occurred:

"Mr. Boland (counsel for defendant): It will be stipulated that that amount is the amount now between us; that that represents only what is due on the well, not for any material. Mr. Laird: That represents the total amount due on the entire transaction, $2,589.72. Mr. Boland: That . . . is to be understood is subject to all offsets we have pleaded, . . . and the further objection to certain items rendered by Mr. Orr which we claim should have been supplied by Mr. Orr under the contract, and not charged to us; and the general objection or offset for damages for failure to complete the well."

After the foregoing colloquy the plaintiff was examined at considerable length relative to various disputed items in his account, at the conclusion of which examination the plaintiff rested. The defendant then moved for a nonsuit, and the following took place:

"Mr. Boland: Plaintiff has made absolutely no proof of the drilling of a well at all. The court: I think your stipulation covers that. . . . The stipulation was that $2,589.70 was still due for the work at that time, less certain credits for materials furnished . . . and subject to your claim for damages. Mr. Boland: That wasn't the intention of the

stipulation by any means. My idea of the stipulation was to avoid any further evidence on the question of accounts. . . . The court: I will deny the motion for a nonsuit. Mr. Boland: We want the question of that stipulation cleared up. . . . Mr. Laird: What is the idea of a stipulation? I don't think it makes any difference. . . . It is conceded we made a *prima facie* case. . . . Mr. Boland: We don't admit you drilled a well. We don't stipulate that at all. . . . The contract provided he should drill a well. We allege that he drilled a hole, if you want to call it that; he didn't complete a well. He was under his contract to drill a well in a good and workmanlike manner. . . . We don't stipulate that amount is due. . . . Mr. Laird: If there is anything due, it is $2,589.72 plus attorney's fees? Mr. Boland: Yes, provided the court finds that he drilled and completed a well to the depth of 950 feet. Mr. Laird: In other words, there is that much due subject to your counterclaim of $10,500? Mr. Boland: Yes. . . . We maintain that . . . the plaintiff has not shown that he has delivered a completed well under the contract. The Court: My ruling was on your motion for nonsuit and does not go to the merits of the case. . . . Under the allegations of your cross-complaint, . . . coupled with the stipulation you have just entered into, and the statements of the plaintiff on the stand, I think there has been sufficient testimony adduced to justify the court in denying a motion for nonsuit."

From the foregoing it appears that counsel for the defendant consistently contended that the plaintiff had not finished a completed well. To give the stipulation the effect contended for by respondent would be to deprive the appellant of an important defense interposed by him. ▉ A stipulation made for the purpose of expediting the trial of an action "ought not to be used as a pitfall." (*Carnegie Steel Co.* v. *Cambria Iron Co.*, 185 U. S. 403 [46 L. Ed. 968, 22 Sup. Ct. Rep. 698, see, also, Rose's U. S. Notes].) "The stipulation is to be interpreted with reference to its subject matter, in the light of the surrounding circumstances, including the state of the pleadings, the allegations therein and the attitude of the parties in respect of the issues." (*People* v. *Nolan,* 33 Cal. App. 493, 496 [165 Pac. 715, 716].) A stipulation, particularly one loosely

made during the trial of a case in court and not reduced to writing, "should be limited so as not to extend beyond what the parties thereto clearly intended." (25 R. C. L. 1105.)

If the finding that the defendant stipulated that "there was due and owing from defendant to plaintiff the sum of $2,589.72," subject to proof of the cross-complaint, be construed in connection with and as dependent upon the next preceding finding that the well was drilled in accordance with the terms of the contract to a depth of 940 feet, then it may be conceded that the finding is warranted by the stipulation, and it may be inferred that the court intended the two findings to be so considered together, otherwise the first of such findings was unnecessary.

It appears from the evidence that the well was started with a diameter of 16 inches. Casing of that diameter was used for the first 312 feet, then 12-inch casing to a depth of about 400 feet, and then 8¼-inch casing to the final depth of 940 feet. It thus appears that when the work of drilling ceased the well contained 940 feet of 8¼-inch casing, 400 feet of 12-inch and 312 feet of 16-inch. Water was first struck at a depth of between 131 and 133 feet and there was "water-bearing gravel nearly all the way from there to 400 feet." By mutual consent the plaintiff "kept on going to see what there was below," with the hope of finding artesian water. When the drill had reached a depth of about 700 feet there was a break of some character in the 8¼-inch casing some 300 feet above the lower end thereof. Plaintiff's driller informed the defendant that "the pipe (casing) wasn't in very good shape." "The pipe was good pipe, 8¼ standard pipe. There happened to be a faulty weld." The driller told the defendant "that 8¼ casing wouldn't go over 800 feet." The defendant said "to keep on going down, see what there was . . . as long as things went all right." Shortly before the drilling ceased the defendant, who was inexperienced in the use of drilling machinery, called the driller's attention to the cable and said he "thought it looked crystallized and worn out, very insecure for a depth of 940 feet lift, and asked him if it . . . wouldn't be wise, where there was so much involved, to buy a new rope." The driller replied that "it wouldn't break." The cable was spliced "a day

or two'' thereafter and it finally broke about 40 feet below the splice. The driller testified that when the casing was down to a depth of 940 feet and the drill had reached a depth of 5 feet lower, ''I was trying to loosen the pipe up to go ahead. We had been working several hours, when the cable broke,'' about 250 feet below the surface. Four or five weeks were spent in an endeavor to remove the remainder of the cable, nearly 700 feet in length, and the tools attached thereto. The driller further testified: ''We tried several times with our different fishing tools. The gravel came in (presumably from a break in the casing) and bothered us. The gravel coming in made it very difficult. When we didn't get it with the mill, we cleared everything away and went down after an impression, and the casing parted. That is the last we done on that well.'' An expert witness for the defendant testified that the course pursued by the plaintiff's driller in attempting to remove the cable and the tools attached thereto from the well was not ''good practice.'' After abandoning the idea of removing the cable and tools from the well, the plaintiff, pursuant to an understanding with the defendant, cut and removed the overlapping 8¼ and 12-inch casings and perforated the 12 and 16-inch casings remaining in the well and ''cleaned the sand out of the well . . . down so that the 12-inch was clear.''

It clearly appears from the foregoing evidence that the plaintiff did not complete the well below a depth of about 400 feet. The hole drilled below that depth, containing the broken casing and filled with sand and gravel and plaintiff's cable and drill, constituted no part of the completed well. Respondent attempts to justify the findings and judgment on the ground that there is no proof of negligence in the drilling of the well.

Whatever the rule to be applied to the cross-complaint for damages may be, it was not necessary for the defendant to prove negligence in order to defeat recovery by the plaintiff for the uncompleted part of the well, but it was a sufficient defense that such part of the well was not completed. (*Chico Well Drilling Co.* v. *Givens*, 206 Cal. 468 [274 Pac. 966].) Under the express terms of the contract, the plaintiff had the right to stop drilling at any depth below 300 feet. (*Wilson* v. *Fuller*, 37 Cal. App. 355 [174

Pac. 671].) Under the same terms, however, he was entitled to payment of the deferred installments of one-half the contract price only "on the completion of the well" to the depth for which he claimed compensation. Regardless of any question· of negligence, plaintiff's inability to complete the well to a depth of 940 feet was due to his own operations and not to any fault of the defendant. ■ "One who has acted by virtue of a written contract has no right of recovery unless he can show that he had completed the contract on his part or that completion had been waived or excused." (*Herdal* v. *Sheehy,* 173 Cal. 163, 165 [159 Pac. 422, 423]; *Ahlgren* v. *Walsh,* 173 Cal. 27, 31 [Ann. Cas. 1918E, 751, 158 Pac. 748]; *Carlson* v. *Sheehan,* 157 Cal. 692, 696 [109 Pac. 29]. See, also, *Gray* v. *Bekins,* 186 Cal. 389, 394 [199 Pac. 767]; *Law* v. *San Francisco Gas etc. Co.,* 168 Cal. 112, 118 [Ann. Cas. 1915D, 842, 142 Pac. 52]; annotations, 53 A. L. R. 103, L. R. A. 1916F, 10, and 13 C. J. 639.) "Mere difficulty, or unusual or unexpected expense, would not excuse him." (*Snow Mountain W. & P. Co.* v. *Kraner,* 191 Cal. 312, 325 [216 Pac. 589, 594]; *Mineral Park Land Co.* v. *Howard,* 172 Cal. 289, 291 [L. R. A. 1916F, 1, 156 Pac. 458]; *Metzler* v. *Thye,* 163 Cal. 95, 98 [124 Pac. 721].) "An unforeseen contingency or event not considered by the parties at the time they entered into their agreement can in no manner affect the same." (*San Pedro etc. R. Co.* v. *Atchison etc. R. Co.,* 183 Cal. 342, 347 [191 Pac. 536, 538].)

■ The court found that the defendant accepted the well. The evidence bearing upon this question was given by the defendant, who testified: "Mr. Orr and Mr. Arnot told me they had dropped some stuff in the well and couldn't go any further. We talked it over. I asked what could be done. Mr. Orr said, 'You have got a well; we couldn't go any further; the tools stuck. There is nothing to do but sandpump and develop the upper well.' . . . I accepted their information that they couldn't go any further. Q. You told them to . . . perforate the casing that remained in the well? A. Yes. . . . They told me that ·they had made a failure of the well. . . . Q. Didn't you have a pump actually installed? A. The mail carrier sent me up a windmill, and he used it for his own purposes. . . . Q. When you told them to perforate the casing, what cas-

ing did you mean? A. The casing connected with the water strata, 240 feet of water bearing strata." The defendant sold and received payment for the overlapping casing which was removed from the well. All the casing used in drilling the well was purchased by the plaintiff, who charged the cost thereof to the defendant, and it appears that the defendant had paid the plaintiff the cost of the 16-inch and 12-inch casing before the action was commenced.

The evidence shows that the defendant accepted only "the upper well," extending to a depth of some 400 feet. The conversation between the parties can be given no other meaning. It has been held that such an acceptance as here shown is not a waiver by the owner of even an action for damages. (*Stephen* v. *Weyl-Zuckerman & Co.*, 33 Cal. App. 566, 569 [165 Pac. 975]; *Machinery & Electrical Co.* v. *Young Men's Christian Assn.*, 22 Cal. App. 416, 419 [134 Pac. 724].) Plaintiff not only failed to complete the well to a lower depth than about 400 feet, but he left his drill and drilling cable fast in the uncompleted part in such manner as to prevent the defendant from drilling to a lower level for the purpose of developing artesian water.

There seems to be no substantial conflict in the evidence as to the amount properly chargeable to the defendant for casing and other materials, but it does not appear what part of the payments made by the defendant should be credited on the cost of such materials. It seems necessary, therefore, to reverse the entire judgment.

Appellant contends that the contract fixes the compensation for drilling beyond the minimum of 300 feet at fifty cents a foot for the first 100 feet and for each succeeding 100 feet fifty cents a foot above the compensation for the next preceding 100 feet. Viewing the contract in the light of practical experience, it is clear that the plaintiff was to receive $3.25 a foot for the first 300 feet, $3.75 a foot for the next 100 feet and for each succeeding 100 feet fifty cents a foot above the compensation for the next preceding 100 feet.

The judgment is reversed.

Thompson (R. L.), J., and Plummer, J., concurred.