[Civ. No. 7188.    Third Dist.    Jan. 2, 1946.]

GRAHAM-HALL SHEET METAL WORKS, LTD. (a Corporation), Respondent, v. A. A. DOUGLAS, Appellant.

King & King & Ghidella for Appellant.

Francis H. Frisch for Respondent.

THOMPSON, J.—The defendant and cross-complainant, A. A. Douglas, has appealed from a judgment of $436.92, which was rendered against him in a suit for the reasonable value of floor furnaces, labor and materials supplied by the plaintiff incident to the construction of several houses.

The defendant, Douglas, was a contractor, who was constructing several houses at Napa. Plaintiff contracted in writing to supply Douglas with seventy-seven floor gas furnaces with a minimum capacity of "30,000 BTU," and other materials and labor. It furnished only twelve furnaces. The plaintiff brought suit for $1,632.37. The complaint was couched in two counts. The first count was based on a claim for the reasonable value of equipment, materials and labor supplied. The second cause was founded on an alleged open book account. The defendant, Douglas, filed an answer denying the material allegations of the complaint. He also filed a cross-complaint, asking for damages for breach of contract in the sum of $749.85, consisting chiefly of failure to supply sixty-five furnaces of the reasonable value of $30 apiece.

The cause was tried by the court sitting without a jury. It found that the written contract, set out in the cross-complaint, was executed and binding; that plaintiff breached the contract by failing to supply sixty-five furnaces, but that the reasonable value of those furnaces was only $19 apiece, instead of $30, as alleged by the defendant. There is no controversy regarding the other items of damages. The court accordingly awarded plaintiff judgment for said sum of $1,632.37, together with the further sum of $83.57, aggregating $1,715.94, from which the court deducted, as damages for breach of contract, sixty-five furnaces at $19 apiece, amount-

ing to $1,235, together with an item of $44.02, being the cost necessarily incurred by the defendant for repairs on account of default of the plaintiff, aggregating the sum of $1,279.02. Judgment was therefore entered in favor of plaintiff for the balance amounting to $436.92. From that judgment this appeal was perfected.

It is contended the findings and judgment are not supported by the evidence for the reason that there is no competent proof that the reasonable market value of the furnaces was only $19 apiece. On the contrary, it is asserted the uncontradicted evidence shows that the market value of those furnaces was in excess of $30 each. No other issue is raised upon this appeal.

■ We are convinced there is no competent evidence that the reasonable market value of the furnaces was only $19 apiece. The uncontradicted evidence is that they were worth in excess of $30.

The defendant, Douglas, testified that he was a contractor and builder of houses, and that he knew the market value of Atlas 30,000 BTU floor furnaces, like the one plaintiff agreed to install in his dwelling houses in 1942 and 1943, when the default occurred. He said that the ''30,000 BTU'' indicated the capacity, required by the contract, of ''British thermal units'' and that ''the price f.o.b. San Francisco was $33.60'' apiece. Mr. E. C. Fanning, the vice president of the International Sales Company, which sold the furnaces in question to plaintiff, testified that plaintiff paid his company $453.60 for the twelve furnaces which were installed in defendants' houses, which would be exactly $37.80 apiece. He explained that the check from plaintiff, dated December 29, 1942, for the sum of $227.60 was only about one-half of the amount received in payment for the twelve furnaces which plaintiff installed in defendant's houses; that his company also later received from plaintiff the further sum of $226 which made a total payment of $453.60, or $37.80 each. He testified that their catalog or listed price for such furnaces was $63, from which the Graham-Hall Company was given a discount of 40 per cent and an additional credit of 5, 5 and 5 per cent; that when distributors buy at one time ''a quantity of 100, they get a discount of 40, 20 and 10'' per cent.

The foregoing testimony is very conclusive evidence that the market value of Atlas floor furnaces, like the ones provided for in the contract, when purchased by distributors, was in excess of $30 each. Thirty-seven dollars and eighty cents

was the actual price paid for them by the plaintiff. Moreover, the defendant, Douglas, was not a distributor. It does not appear that he could buy those furnaces on the market for the same discount which was allowed to plaintiff. We must presume he would have to pay more for them than the plaintiff paid.

It is true that Mr. John Graham, the president of the plaintiff corporation, testified that he received a discount of 50 per cent from the catalog or list price. The list price, according to the undisputed evidence of Mr. Fanning, was $63. That would mean that plaintiff paid the sum of $31.50 apiece for the furnaces. Mr. Graham testified in that regard: "The Court: Q. You get a special price? A. That is right, yes sir. . . . $37.80, less 10%, I still make a profit." The price of $37.80 less 10 per cent would mean that he actually paid $34.02, which is in excess of $30. It is quite evident from the testimony of Mr. Fanning that Mr. Graham was mistaken when he assumed that plaintiff's check of $227.60, paid on December 29th, was the full purchase price of only $19 apiece for the twelve furnaces installed. In response to the question, "Why did you say at the last hearing this check for $227.00 was in payment of the 12 furnaces?" he replied, "Because that is the price *that was quoted on carload lots* and *I assume that is the price that was paid,* and that is the only check I could find. . . ." Mr. Fanning positively testified plaintiff subsequently paid his company another check of $226, which clearly shows, as previously stated, that plaintiff paid a total sum of $453.60 for the twelve furnaces, or $37.80 apiece. Mr. Graham only "assumed" that he paid $227.60, or $19 apiece, for the twelve furnaces because he found in his files only the one cancelled check of $227.60. Moreover, he said that was the price quoted "on carload lots." The uncontradicted evidence is that carload lots consist of 150 furnaces. No carload lots were purchased. The defendant was required to purchase only 65 furnaces to replace those which plaintiff failed to supply. Mr. Fanning testified, as previously related, that upon quantities of 100 or more furnaces his company allowed 40, 5, 5 and 5 per cent discount to distributors from the list price of $63 apiece.

In estimating damages, the value of property to the purchaser who is deprived of it, by failure to deliver it on account of a breach of contract, or otherwise, " is deemed to be the price at which he might have bought an equivalent thing in

the market nearest to the place where the property ought to have been put into his possession, and at such time after the breach of duty upon which his right to damages is founded as would suffice, with reasonable diligence, for him to make such a purchase.'' (Civ. Code, § 3354.)

The measure of damages for a breach of contract, or a failure to perform in whole or in part, is the amount which will compensate the party aggrieved for all the detriment proximately resulting to him thereby. (Civ. Code, § 3300; 25 C.J.S. 563, §§ 74 and 75.) ■ When a contract to install floor furnaces and plumbing in buildings, after partial performance, is breached and abandoned by the subcontractor, the aggrieved party to the contract is entitled to damages in an amount which would compensate him for the detriment incurred thereby. Ordinarily such damages would be the additional cost of the materials and labor required to complete the agreement as specified in the contract. (25 C.J.S. 568, § 75.) ■ In the present case the market value of the sixty-five furnaces and plumbing which the plaintiff failed to supply according to contract would not necessarily be the measure of damages to the defendant and cross-complainant on account of that breach of contract. It would be the additional cost incurred by the cross-complainant in purchasing and installing furnaces and plumbing of the value and type specified by the contract. The court erred in allowing as damages for failure to install the furnaces the sum of $19 apiece for the sixty-five furnaces which were not installed as per contract. It is evident that if, as the record indicates, the defendant was unable to purchase furnaces on account of the government ''freezing'' of sales of such equipment and materials during the war, his damages for breach of contract in that regard might be the difference in his contract price with the owner of the buildings with and without the furnaces and plumbing. There is evidence of damages, but we are unable to determine the proper amount. It therefore becomes necessary to remand the case for retrial.

The judgment is reversed and the cause is remanded.

Adams, P. J., and Peek, J., concurred.