FRED J. KIRKPATRICK, Appellant, *v.* EVERETT TEMME and JUDITH TEMME, Husband and Wife, Respondents.

No. 13572

December 9, 1982

654 P.2d 1011

*James Shields Beasley,* Reno, for Appellant.

*Vargas & Barlett,* and *Stephen S. Kent,* Reno, for Respondents.

## OPINION

By the Court, MANOUKIAN, J.:

This is an appeal from a money damage award arising from a residential construction project. Appellant asks us to review several claims of error. We find it appropriate, however, to address only one issue: whether the trial court erred in awarding damages based upon the actual cost of completing the construction, rather than the reasonable cost of completion. We have determined that it did not and affirm the money damage award.

In June of 1977, respondents Everett and Judith Temme purchased a lot at Incline Village, Nevada. On July 19, 1978, appellant and respondents entered into a contract for the construction of a residence on that lot. The contract provided that the cost of construction and the contractor's fee would not exceed $175,000.00. Construction was to commence on or before August 25, 1978, and would be completed no later than December 25, 1978.

Nevertheless, excavation on the construction site did not commence until on or about October 12, 1978. Construction continued into the Spring of 1979. By that time, appellant had spent substantially all of the construction funds. Following appellant's refusal to complete the house for the contract price of $175,000.00, respondents terminated him and hired contractor Del Miller to complete the work. Appellant testified that at his termination, the house was 80% complete and would have required only $39,200.00 to finish. Respondents paid Miller $84,333.73 to complete the house. Both the respondents and their architect testified that the house was completed in accordance with the contract's terms and specifications.

After a bench trial, the court found, *inter alia,* that the parties entered into a construction contract on July 19, 1978, and that the appellant's lack of preparation and diligence was the sole cause for the construction delays and resultant increase in cost. Respondents were awarded their actual cost of completion in the amount of $84,333.73.

The sole issue which we address is one of first impression in

Nevada. We must decide whether the trial court erred in awarding damages for the expenditures respondents incurred in completing their residence after justifiably terminating appellant, without finding the expenditures to be both reasonable and necessary. In the instant case, the trial judge awarded respondents their actual costs of completion. The respondents introduced into evidence a list of expenditures actually incurred in completing their residence. Its admission was clearly limited to evidence that the respondents had, in fact, spent an additional $84,333.73 to complete their home. No evidence was introduced concerning the reasonableness of respondents' expenditures.

The general rule for the measure of recovery by an owner for an incomplete performance by a defaulting contractor has been stated by some authorities as the reasonable cost of construction and completion in accordance with the contract. Davis v. McCall, 568 P.2d 956 (Alaska 1977); Kennedy v. Reece, 37 Cal.Rptr. 708 (Cal.App. 1964); Johnson v. Flammia, 363 A.2d 1048 (Conn. 1975); Ferris v. Mann, 210 A.2d 121 (R.I. 1965). *See also,* Restatement, Contracts § 346(1)(a)(i) (1932); McCormick on Damages, § 169 at 650 (1935).

The facts in Ferris v. Mann, 210 A.2d 121 (R.I. 1965), are analogous to those now before this court. The *Ferris* court held that even though the owner introduced a list showing the nature and cost of the additional work done by the owner to finish part of the construction, in absence of any evidence as to the reasonableness of the expenditures, the owner could not recover for the materials he had installed. *Id.* at 123. The Rhode Island court stated that ''[i]t is a well established principle that one who sues to recover such damages has the burden of proving the reasonable value of the materials and labor in question.'' *Id.* The rationale of the ''reasonable cost'' theory evolved from the concern that an owner would resort to more expensive methods of completion than specified by the contract and impose the additional cost on the contractor in a suit for breach of contract.

The courts and writers, however, are divided as to the appropriate standard of damage. A second line of authority holds that the owner may recover the difference between the contract price and the actual cost as damages for the cost of completion following a contractor's breach. *See* Graham-Hall Sheet Metal Works, Ltd. v. Douglas, 164 P.2d 778 (Cal.App. 1946); Marcou Const. Co. v. Tinkham Indus. & Dev. Corp., 371 A.2d 1187 (N.H. 1977); Darger v. Nielsen, 605 P.2d 1223 (Utah 1979). *See also,* J. Acret, California Construction Law Manual, § 2.17 at 58 (1975); *accord,* Attorneys' Guide to California

Construction Contracts & Disputes, § 3.61 (CEB 1976); California Attorneys' Damage Guide, § 1.30 (CEB 1974); 17A C.J.S. Contracts § 512(c) at 835 (1963). The underlying rationale of the "actual cost" theory is consistent with the objective of contractual damages, namely, awarding the aggrieved party the benefit of the bargain. Assessing damages under the "actual cost" method places "the nonbreaching party in the same position it would have been in by full performance." *Marcou Const. Co.* at 1188; *accord* 11 Williston on Contracts, Third Edition, § 1363 at 344 (1951).

The Utah Supreme Court addressed the concern that an owner may turn a suit to recover the cost of completion to an unfair advantage in Darger v. Nielsen, 605 P.2d 1223 (Utah 1979). *Darger* held that an owner's prima facie case for damages consisted of an allegation regarding what the contractor was bound to do under the contract; what the contract price was for those services; what the second contractor had to do to complete in accordance with the contract; and how much the owner paid to complete the contract. The *contractor* bore the burden of proof concerning allegations that the cost was unreasonable or that the owner added construction beyond the contract specifications. *Id.* at 1225; *cf.* Stangl v. Marathon Steel Co., 554 P.2d 1316 (Utah 1976).

We are in accord with the view expressed in *Marcou Const. Co., Darger* and other cases which adopt the "actual cost" standard of damages for a contractor's breach of contract. It is both unfair and unrealistic to place the burden of proof on an innocent owner regarding the reasonableness and necessity of the costs of completion following the contractor's abandonment of the project or breach of contract.[1] Generally, the contractor, not the owner, has the expertise in hiring and supervising construction personnel, in obtaining quality materials at the most favorable prices and in acquiring the permits and variances required by governmental agencies. These factors were magnified in the instant case, which involved a wintertime project at Lake Tahoe. Here, by application of the "actual cost" theory, respondents will receive the benefit of their bargain; a residence built in conformity with the contract specifications.

---

[1] One court has shifted the burden to the owner if the owner *wrongfully* terminates the contract without a legally sufficient reason or prevents the contractor from completing the contract. Reitano v. Pennisular Building Supply Co., 262 So.2d 710 (Fla.App. 1972); 17A C.J.S. Contracts § 512(c) at 836 (1963). This is not the case in the instant proceedings. Here, the trial court found that the delayed commencement date, which was the root of many of the problems, was occasioned by the contractor's slothfulness.

In its decision, the trial court made a computational error,[2] when determining the amount of damages awarded to appellant on his counterclaim. This error in computation is a clerical error under NRCP 60(a) which must be corrected. *See* Channel 13 of Las Vegas v. Ettlinger, 94 Nev. 578, 583 P.2d 1085 (1978); Marble v. Wright, 77 Nev. 244, 362 P.2d 265 (1961).

Appellant claims a second clerical error in the trial court's decision. Respondents' architect testified that the owners' request to enlarge the size of certain round windows cost an additional $1,460.00. Appellant estimated the increased cost at $5,200.00. The trial judge awarded appellant only $460.00 for this item of damage. Although the record contains conflicting evidence on the cost of increasing the size of the round windows, the trial court relied heavily on the architect's cost estimates in awarding appellant damages for the cost of the extra work he performed. Additionally, there is no evidence in the record that suggests that the cost of expanding the round windows was, in fact, $460. "[A] clerical error is one which cannot reasonably be attributed to the exercise of judicial consideration or discretion." Marble v. Wright, 77 Nev. 244, 248, 362 P.2d 265, 267 (1961). Given the lower court's reliance on the architect's estimates and the absence of any evidence showing that the cost of expanding the round windows was $460, the award for the extra costs for expanding the round windows cannot be reasonably attributed to the exercise of judicial discretion. Hence, relief under NRCP 60(a) is also appropriate for this item of damage.

---

[2]In its decision, the trial court awarded the following damages to defendant-appellant:

| | |
|---|---|
| 9° Rotation of House (retaining wall, increased height) | $7,240.00 |
| Extend Driveway | 3,733.00 |
| Add Bathroom—Bedroom 2 | 2,100.00 |
| Add Fireplace—Bedroom 2 | 700.00 |
| Add Exterior Deck—Bedroom 2 | 973.00 |
| Change Windows to French Doors—Bedroom 2 | 50.00 |
| Increase Size of Round Windows | 460.00 |
| Rough-in for Future Wet Bar | 288.00 |
| Install Additional Water Heater & Pump | 1,394.00 |
| Install Furnace and Water Heater in Crawl Space | 783.00 |
| Add Four Power Outlets in Crawl Space | 200.00 |
| Finish Underside of Wood Decks | 405.00 |
| Install Additional Window in Vista Loft | 320.00 |
| Defendant-Appellant's Total Damages | $17,646.00 |

The correct summation of this award is $18,646.00.

Respondents argued that this proceeding should be stayed because appellant had filed a petition for bankruptcy. We reject this argument.

The remaining assignments of error are without merit or were not properly raised. Williams v. Zellhoefer, 89 Nev. 579, 580, 517 P.2d 789 (1973); Britz v. Consolidated Casinos Corp., 87 Nev. 441, 447, 488 P.2d 911, 915 (1971); Young Electric Sign Co. v. Erwin Electric Co., 86 Nev. 822, 828, 477 P.2d 864 (1970).

The decision and awards of the trial court are affirmed, with the exception of the clerical errors. This case is remanded to the trial court for an adjustment of those awards consistent with this opinion.

GUNDERSON, C. J., and SPRINGER, MOWBRAY, and STEFFEN, JJ., concur.