[L. A. No. 6099. Department Two.—July 26, 1920.]

## SAN PEDRO, LOS ANGELES AND SALT LAKE RAILROAD COMPANY, Appellant, v. THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, Respondent.

[1] Contract—Trackage Agreement Between Railroad Companies—Payment of Taxes—Subsequent Changes in Method of Taxation.—A covenant in a trackage agreement between two railroad companies for the joint use of leased connecting lines held and operated by one of them, requiring the other to pay one-half of all taxes accruing upon the leased lines during the term of the agreement, is to be interpreted without regard to changes subsequently made as to the method of taxation, in the absence of any provision in the contract providing for such a contingency.

[2] Id.—Unforeseen Contingency—Contract Unaffected.—An unforeseen contingency or event not considered by the parties at the time they entered into an agreement can in no manner affect the same.

[3] Evidence—Change in Tax Laws.—It is a matter of common knowledge that our tax laws and the amount to be paid seldom, if ever, remains constant.

[4] ID.—CONSTRUCTION OF CONTRACT—HARMLESS ERROR.—In an action involving the proper construction and effect to be given to a covenant in a contract relating to the payment of taxes, the admission of evidence which in no manner tends to aid in the interpretation is harmless error.

APPEAL from a judgment of the Superior Court of Los Angeles County. L. H. Valentine, Judge. Affirmed.

The facts are stated in the opinion of the court.

A. S. Halsted, Dana T. Smith, E. E. Bennett and Fred E. Pettit, Jr., for Appellant.

E. W. Camp, U. T. Clotfelter, Gardiner Lathrop and Charles H. Woods for Respondent.

· The following opinion was prepared by Mr. Justice Kerrigan of the district court of appeal for the first appellate district while acting as justice *pro tempore* in this court in place of Mr. Justice Melvin. It is adopted as the opinion of this court.

THE COURT.—By this action plaintiff seeks to recover the sum of $71,534.08, paid on account of state taxes to defendant under a certain agreement relating to the same. It is admitted that the amount was paid under duress and protest. For the sake of brevity counsel have referred to the plaintiff as the Salt Lake Company and to the defendant as the Santa Fe Company. We will so refer to them.

The plaintiff and defendant are railroad companies and this action involves the construction of a certain trackage agreement entered into between them. It appears from the record that the Santa Fe Company holds and operates in this state two connecting lines of railroad under lease from the Southern Pacific Company. One of these lines extends from Barstow to Daggett and the other from Colton to Barstow. The Salt Lake Company owns, controls, and operates a line of railway extending from San Pedro to Colton. By the terms of the contract under consideration the parties hereto agreed to jointly use the leased lines of the Santa Fe Company upon certain conditions. The lines are designated in the agreement as the "Joint Line." The contract is

lengthy, but the issue in the case relates to the covenant to pay taxes. This issue arises from a difference between the parties as to the proper construction and effect to be given to that covenant. The right or license to use the Joint Line was for an indefinite period, terminable upon three years' notice, the grant being conditioned, among other things, upon the payment to the Santa Fe Company for such use, of a sum of $48,782.38 per annum and a certain per cent of costs chargeable to capital account, together with sums equal to one-half of all taxes and assessments accruing upon or in respect of all or any part of the railroads, franchises, and other property composing the Joint Line, during the term of the agreement, since terminated.

The contract further provided that the taxes and assessments accruing upon the Joint Line should be deemed to be such proportion of the total taxes paid by the Santa Fe Company as the Joint Line mileage bore to the total mileage on which said taxes were paid.

The so-called Joint Line is situated within the state of California, and the lines of the Santa Fe Company, of which the Joint Line forms a part, extend into different counties.

The contract here involved is dated April 26, 1905. From that date until the year 1910 taxes were assessed and levied directly against railroad property in the state, the assessment being an *ad valorem* one only. The amount paid as taxes by the Salt Lake Company for the period aggregated $70,687.36. There is no dispute concerning payments made during this time. Upon the adoption in 1910 of a constitutional amendment prescribing what is generally termed the "gross earnings" method of taxation of railroads, this system of taxation was changed. (Sec. 14, art. XIII.) By it and the enactment of laws in conformity therewith (Laws 1911, sec. 9, c. 335) the railroads were required to pay as taxes to the state in lieu of all other taxes sums equal to a certain percentage of the gross earnings from the operation of their railroads. By reason of this change a dispute arose between the parties as to the proper interpretation of their contract relative to the payment of taxes. Under the constitutional amendment and the laws passed in pursuance thereof both the Santa Fe Company and the Salt Lake Company were required to pay a tax "equal to the percentages hereinafter fixed upon the gross receipts from the

operation of such companies within the state." The amendment also provided that the gross receipts shall be deemed to be all receipts on business beginning "and ending within this state, and a proportion, based upon the proportion which the mileage within the state shall bear to the entire mileage over which the business is done, of receipts on all business passing through, into or out of this state."

After the adoption of this constitutional amendment the Santa Fe Company claimed that the Salt Lake Company should pay one-half of the amount of the Santa Fe Company's gross earnings' tax allotable to the Joint Line on a mileage basis. The Salt Lake Company, on the other hand, insisted that the amount of its gross earnings' tax allotable to the Joint Line by the same method of taxation should be taken into consideration in order to determine the amount due from it to the Santa Fe Company under the agreement, it being claimed that the total sum to be paid by the Salt Lake Company under the terms of the contract was one-half of the aggregate of the taxes so paid by both companies allotable to the Joint Line.

The trial court adopted the construction of the Santa Fe Company and rendered judgment in its favor and plaintiff appeals.

We are of the opinion that the construction adopted by the trial court is the proper one to be given to the agreement.

It is admitted that the tax paid by both companies under the new method of taxation is a tax upon property within the meaning of the contract. The question here presented, therefore, requires a construction of the tax clause in the agreement. That portion of the covenant involved is as follows:

"That in consideration of the foregoing grant, the San Pedro Company agrees: That from and after the date of the commencement of said term, and until such term shall expire as provided in section 3 of article I, it will pay to the Atchison Company, at its office in the City of Los Angeles, California, the following sums, namely:

"(b) From time to time, sums equal to one-half of all taxes and assessments, which during said term shall accrue upon or in respect of all or any part of the railroads, franchises and other property composing the Joint Line.

"The taxes and assessments accruing upon or in respect of that portion of the Joint Line which is leased by the Atchison Company from the Southern Pacific Company, shall be deemed to be sums bearing the same ratio to the whole sums payable by the Atchison Company under said indenture of lease and contract dated July 15, 1898, in respect of taxes and assessments upon the whole line leased to the Atchison Company under said indenture of lease and contract, as the mileage of said portion thereof embraced in the Joint Line bears to the mileage of said leased line.

"Inasmuch as the portion of the Joint Line leased by the Atchison Company from the Southern California Railway Company, will not be taxed or assessed separately, but will be taxed or assessed with or as a part of other railway lines of the Southern California Railway Company or of the Atchison Company, it is understood and agreed that the taxes and assessments upon that portion of the Joint Line shall be deemed and taken to be such share of the taxes and assessments upon all such lines including such portion of the Joint Line so taxed together as an entirety, as shall bear to the whole of such taxes and assessments thereon the same ratio as that which the mileage of said portion of the Joint Line shall bear to the mileage of all such lines so taxed together or as an entirety.

"Any taxes or assessments for any year of which only a part is included in said term shall be apportioned and the San Pedro Company shall pay a sum equal to one-half of a share thereof proportionate to such part of the year as is included in the term.

"Each sum payable under this subdivision (b) in respect of taxes and assessments shall be payable by the San Pedro Company, within thirty days after the Atchison Company shall have paid such taxes and assessments, and shall have caused a written statement thereof to be furnished to the San Pedro Company."

[1] Neither counsel has furnished us authority, and we have found none, where a contract of like character has received judicial interpretation. To us, however, it appears that none is required, for the terms of the covenant involved seem clear and free from doubt. From the language employed, considering the surrounding circumstances at the time the contract was entered into, it is plainly manifest

that it was the intention of the parties hereto that the Salt Lake Company was to pay one-half of the taxes imposed on the Joint Line, which the Santa Fe Company was required to pay during the life of the agreement.

The contract provides that the Salt Lake Company shall pay one-half the taxes allocated to the Joint Line "after the Atchison Company shall have paid such taxes."

Again, it is provided that the taxes shall be payable by the Salt Lake Company "thirty days after the Atchison Company shall have paid such taxes and assessments, and shall have caused a written statement to be furnished to the San Pedro Company."

The plain inference from these provisions is that the Santa Fe Company was to be reimbursed for one-half of the taxes paid by it upon the property constituting the Joint Line. Nothing is contained in the contract with reference to what the Salt Lake Company might be obliged to pay by reason of a change in the taxing method. Under the method of taxation in force at that time the taxes levied against the Joint Line were wholly paid by the Santa Fe Company. No other system of taxation, such as here involved, under which both parties might become liable for a tax by reason of the use of the Joint Line, seems to have been contemplated by the parties, for their contract contains no clause with reference to such a contingency. **[2]** An unforeseen contingency or event not considered by the parties at the time they entered into their agreement can in no manner affect the same.

**[3]** It is a matter of common knowledge that our tax laws and the amount of the tax to be paid seldom, if ever, remains constant. Different character and forms of taxes and assessments are frequently being created. The parties hereto are deemed to have had knowledge of this fact, and it was their duty, if such was their intention, to make provision relating to such change. We cannot do this for them. To do so would be to impose upon them a contract which neither party might have assented to in the first instance.

The fact that the change in the law might create additional burdens upon either of the parties is of no consequence. The agreement provides that the Salt Lake Company shall pay to the Santa Fe Company one-half of all taxes which shall accrue during the term thereof. It is admitted

that the amount paid by defendant was paid as taxes, and there is no question that they accrued during the term of the contract.

Appellant complains of the admission of certain evidence offered by defendant for the purpose of showing that the change in the method of taxation did not bring about an equitable result. From this evidence it appeared that for the years 1907 to 1910 the taxes paid by the Salt Lake Company aggregated $70,687.36, and that from 1911 to 1914, inclusive, the amount paid was $93,513.69. To justify its admissions respondent argues that the evidence refutes the claim of gross injustice, for the reason that under plaintiff's construction of the agreement it would only pay $21,979.60 for the disputed period, notwithstanding that the taxes were materially higher than during the preceding four years. The evidence should have been rejected. Courts are not concerned with the question of how changed conditions might or might not benefit either party where their contract is silent with reference thereto. [4] The admission of the evidence, however, was harmless, for it in no manner tended to aid the court in the interpretation of the agreement, for it did not affect the same.

For the reasons given the judgment is affirmed.

Wilbur, J., Lennon, J., and Sloane, J., concurred.