Filed 12/8/15  Kohandarvish v. Asaf CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| SAEID KOHANDARVISH, | B257214 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LC098321) |
| v. | |
| JAMSHID ASAF, | |
| Defendant and Appellant. | |


APPEAL from judgment of the Superior Court of Los Angeles County, John Farrell, Judge.  Affirmed.


Law Offices of Mark Henry Shafron and Mark Henry Shafron for Defendant and Appellant.


Law Offices of Linda D. Lucero and Linda D. Lucero for Plaintiff and Respondent.

_____

**INTRODUCTION**

Defendant and Appellant Jamshid Asaf appeals the judgment after court trial awarding Plaintiff and Respondent Saeid Kohandarvish $90,331.48. Judge Farrell found that the parties entered into an oral agreement by which money would be lent from the respondent to the appellant. The court found that the appellant breached the oral contract as of September 7, 2010. The court calculated that the total sum of the principal borrowed, less the principal amounts repaid, was $66,300. The court also found that respondent had not established that the agreement contemplated a fixed rate of interest or how that interest would be computed. However, pursuant to Civil Code section 3289, the court applied a prejudgment 10 percent simple interest to the amount owed as of September 10, 2010. As of April 25, 2014, appellant owed respondent interest of $24,031.48. The court entered judgment on April 23, 2014.

Appellant appeals the judgment. We affirm.

**FACTS AND PROCEDURAL BACKGROUND**

Over the course of three years, respondent agreed to lend appellant a substantial amount of money. Respondent alleged that he funded a series of separate loans in cash or with personal or cashiers' checks. Appellant was to repay the loans in cash within five to six years from the date of the last payout. To memorialize the loans, appellant presented respondent with a "pledge check" in the amount of the loan. These checks were not intended to be cashed. Rather, they simply memorialized the amount borrowed. Appellant provided these "pledge checks" from a number of different accounts, including his personal checking account, his dental practice (Encino Smile Center) account and an account from Ednaco, an import business in which appellant was involved.

There was no written agreement memorializing this ongoing lending arrangement, other than documents reflecting the collection of checks and receipts for cash at different times, and a few notations occurring at different times. Given the informality of the arrangement, it is not surprising that on September 7, 2010, the appellant asserted that he had repaid all the loans and refused to pay respondent anything more. Appellant also

2

argued that the loans made by respondent to Ednaco had nothing to do with him and that he had not "guaranteed" any loans between respondent and Ednaco.

Respondent sued. On September 6, 2012, respondent filed a complaint for breach of oral and written contract, fraudulent misrepresentation, unjust enrichment, common counts (accounting) and a count to "pierce [the] corporate veil" against appellant and his dental practice.

A court trial was held. At trial, the court heard testimony from appellant, respondent and additional witnesses associated with Ednaco.[1] During the trial, respondent testified that he had loaned $313,000, including interest, to appellant. Appellant also testified as to the amount of money lent. Appellant could not provide an aggregate number, but instead required counsel to go through each of the various "pledge checks." When counsel inquired as to the Ednaco checks, appellant claimed not to know the purpose of those checks. On redirect examination, appellant denied having secured a loan using those checks or having guaranteed a loan for Ednaco.[2]

At the conclusion of appellant's testimony, counsel for respondent again asked appellant "[d]o you know the total of the loans in the form of checks from Dr. Kohandarvish to you?" And, in response, the appellant asserted "I don't know. You have to put them together." Respondent's counsel then attempted to ask appellant to calculate the amount he had borrowed from respondent -- excluding the Ednaco checks. At that point, appellant's counsel proffered "I would stipulate *if their contention is that $144,000 was paid by Dr. Kohandarvish to Dr. Asaf*, if that's their number, I would stipulate it was $144,000." (Italics added.) To which respondent's counsel replied, "Okay, very good." Respondent's counsel then asked whether appellant thought that the

---

[1]    Appellant called Gholam Farzad, the Ednaco accountant. Farzad stated that Ednaco was not a going concern in 2006. Preceding that statement, Farzad had testified regarding the negative cash position of Ednaco at the beginning of that year.

[2]    At some point during cross-examination, counsel for appellant stated that "[they would] stipulate" that appellant had repaid respondent $226,700. The respondent and the court accepted that stipulation.

loaned amount exceeded the amounts repaid. On re-direct examination following this colloquy, appellant's counsel elicited testimony that even though appellant stipulated to having paid $226,700, that amount was conservative and that he had repaid even more to respondent. Both sides rested.

On March 21, 2014, the court issued a proposed statement of decision. In the decision, the court described the parties' lending practices. Specifically, the court accepted the parties' stipulation that appellant had repaid respondent $226,700 for loans made between March 2004 and December 2006. The court also found that appellant made payments on the loans until September 7, 2010, at which time he said he would make no more payments and claimed he had overpaid.

The court painstakingly resolved the parties' conflicting testimony regarding how much money had been lent. Specifically noting that in the absence of writings, a substantial factor in determining what amounts were actually lent was the credibility of the parties. The court found respondent more credible than appellant. "Dr. Asaf's view of testimony was to deny anything that he thought could not be proved." The court found that "[i]t would be hard to give credence to any of Dr. Asaf's testimony which was not otherwise supported by evidence."

In light of that credibility determination, the court considered four groupings of "pledge checks" to compute the amount of money lent by respondent to appellant.

Check Group A consisted of pledged checks from appellant's personal account and Encino Smile Center. As noted by the court, "Dr. Asaf has taken the position that these are the only loans for which he is liable." In addition, the court found that a cashed check to appellant from respondent for $10,000 for which there was no return pledge check was also sufficient to establish a debt. The total amount of these "loans" came to $154,000.

Check Group B was a series of checks payable to Ednaco but using pledge checks from either the appellant's business or private account. The notation on these checks showed " 'loan to Asaf' " and supported the respondent's contention that asked to have loan checks made out to Ednaco, but that were intended for appellant's benefit. "This

4

was not a guarantee of payment but rather that Dr. Asaf specifically asked that payment be made on his behalf to a company Dr. Asaf was tied into, and that the payment obligation would be by Dr. Asaf." The amount of these loans came to $39,000.

Check Group C were checks made out to Ednaco, which were handed to Ednaco's representative Davidi, who handed respondent an Ednaco check as a pledge check. These checks have a notation of " 'personal loan' " or " 'Loan to Dr. Asaf' " or " 'Dr. Asaf.' " The court found that appellant's involvement with Ednaco was extensive and that appellant told respondent that he was a partner or person of authority within this company. The evidence showed that Ednaco's ledgers did not reflect having received any funds or loans from respondent. In fact, Ednaco was not a going concern at the time that these loans took place. The court concluded that these transactions, using checks made out to Ednaco, were in fact personal loans to appellant.

Check Group D was a single cashier's check for $30,000 to Ednaco and a returned, uncashed check from Ednaco for $30,000. There is a notation of " 'Ret. Loan' " on the Ednaco check but no notation on the cashier's check from respondent. For that reason, the court concluded that respondent had not met his burden of establishing that this amount constituted an unpaid obligation of appellant.

Adding the amounts of these Check Groups A, B and C, the court found that respondent lent appellant $293,000. The court then calculated that the total sum of the principal borrowed, less the stipulated principal amount repaid, was $66,300.

The court also found that respondent had not established that the agreement contemplated a fixed rate of interest or how that interest would be computed. However, pursuant to Civil Code Section 3289, the court applied a prejudgment 10 percent simple interest to the amount owed as of September 10, 2010. As of April 25, 2014, appellant owed respondent interest of $24,031.48. The court entered judgment on April 23, 2014.

## DISCUSSION

Appellant asserts six different grounds in support of his appeal. Each is discussed below.

5

A. *The Court Did Not Abuse Its Discretion in Disregarding a "Stipulation" As to the Amount of the Money Lent by Respondent.*

Appellant argues in his first ground that the trial court abused its discretion or committed reversible error when it failed to apply the "stipulated amount" of $144,000 to determine the amount of money that respondent had lent appellant. Appellant contends that the parties entered into a stipulation in the closing minutes of the trial and, had he not believed that such a stipulation had been made, he would otherwise have "offered additional proof that indeed the sum lent was $144,000.00." Respondent counters that this characterization of the record is "false, misleading, and an outright distortion of the facts,"

A review of the record and relevant case authority fail to support appellant's characterization of this colloquy as a "stipulation" between the parties. "A stipulation is an *agreement* between attorneys." (*Baker v. Solari* (1958) 166 Cal.App.2d 472, 475.) As with any other agreement or contract, it is essential that the parties or their counsel agree to its terms. (*Southern Pacific Co. v. Schwartz* (1964) 226 Cal.App.2d 481, 485.)

The transcript portion relied upon by appellant does not show an agreement between the attorneys. In the question preceding appellant's counsel's offer to stipulate, respondent's counsel was addressing the loans that did not involve Ednaco. Appellant's counsel then gratuitously offered that *if* the respondent's contention was that "$144,000 was paid by Dr. Kohandarvish to Dr. Asaf, if that's their number, I would stipulate" to that. Such a confusing, partial and conditional proposal does not create an enforceable agreement between the parties. Nor does respondent's counsel's retort, "Okay, very good," followed by additional questions about the amount lent, indicate an acceptance of such an offer. Where, as here, the existence of a stipulation is disputed by the parties and is not apparent on the record, it will not be enforced. (See *Fresno City High School Dist. v. Dillon* (1939) 34 Cal.App.2d 636, 644; *Orr v. Forde* (1929) 101 Cal.App. 694, 699-700.)

6

As there was no agreement or "stipulation" as to the amount lent appellant by respondent, it was not erroneous for the court to adjudicate that issue. Substantial evidence on the record supports the court's conclusion that the total amount of the loans made by respondent to appellant was $293,000.

B. *Substantial Evidence Supports the Court's Finding That the Ednaco Transactions Were, in Reality, Personal Loans to Appellant.*

Appellant's second, third, fourth and fifth grounds challenge the sufficiency of the evidence supporting the court's conclusion that the Ednaco transactions were, in fact, personal loans between appellant and respondent. The appellant's second ground asserts that there was no substantial evidence that Ednaco was the alter ego of appellant or that appellant guaranteed the loans made by Respondent to Ednaco. The appellant's third ground asserts that substantial evidence supports his version of events, *i.e.,* that the Ednaco loans did not involve appellant but were, instead, loans between Respondent and that entity. In his fourth ground, appellant asserts that respondent was required to mitigate his losses by asking Ednaco to make good the pledge checks. And, finally, the appellant asserts in his fifth ground that the court's finding that Ednaco was not a "going concern" in 2006 was not supported by substantial evidence in the record.

Where the evidence is in conflict, the appellate court will not disturb the findings of the trial court. The presumption being in favor of the judgment, the court must consider the evidence in the light most favorable to the prevailing party, giving him the benefit of every reasonable inference and resolving all conflicts in support of the judgment. (*Crawford v. Southern Pacific Co.* (1935) 3 Cal.2d 427, 429.)

In this case, considering the evidence in the light most favorable to the respondent, there was substantial evidence of appellant's significant relationship with Ednaco and that appellant used that position to secure personal loans from respondent. Appellant was at the Ednaco offices every Wednesday for a substantial period of time. Appellant presented himself at trade shows as the company's vice president. He was heavily involved with the company and, on one occasion, he had respondent's brother take $10,000 in cash to one of Ednaco's date producers. Ednaco's CPA testified that as of

2006, the firm was no longer a going concern, although it appears that "she" continued to make sales during that year.

Appellant's contention that he had nothing to do with these loans and, instead, they were obligations solely between respondent and Ednaco was contradicted by other credible witnesses and documents. Ednaco's ledger does not show that it received any money from respondent. And, most significantly, respondent credibly testified that appellant told him that he was a partner or a person of authority at Ednaco, that Ednaco was his second business and that he had taken over the company. Respondent credibly testified that appellant instructed him on how to make out the checks and from whom to expect repayment. The checks themselves bore notations of "personal loan" or "loan to Dr. Asaf." Thus, there was substantial evidence upon which the court could reasonably infer that the checks made out to Ednaco and secured with a pledge check were, in fact, personal loans to appellant.

Having found that the Ednaco transactions were personal loans between respondent and appellant, it was not necessary for respondent to establish that appellant had agreed to guarantee an Ednaco debt. Nor did respondent need to show that appellant was the alter ego for Ednaco. That Ednaco's name appears on certain documents does not prevent appellant from being the principal debtor, nor does the manner of delivery of checks change the nature of the obligation. (See *Sanders v. Riviera Realty Co.* (1951) 104 Cal.App.2d 70, 75-76.)

The third and fifth grounds challenge whether two of the court's conclusions were based on substantial evidence adduced at the trial. Appellant questions whether the evidence was sufficient to establish appellant's liability on certain of the Ednaco transactions and whether the expert's testimony can be fairly construed to support the court's conclusion that Ednaco was not a going concern in 2006. Merely positing alternative versions of the events does not state a valid basis for an appeal. (*Evje v. City Title Ins. Co.* (1953) 120 Cal.App.2d 488, 492.) That the court accepted the credible testimony of respondent regarding the nature of the Ednaco transactions and that Ednaco's expert testified in a way other than the version that appellant's counsel

expected does not state a ground for reversal. Gholen Farzad unequivocally and unambiguously testified that Ednaco was not a going concern in 2006. As an accountant, he could hardly be expected to be confused over the meaning of that term. And, that "she" continued to make sales that year does not affect the substantial nature of the CPA's admission. Farzad testified that as of the beginning of 2006, Ednaco had a negative cash balance showing on its ledger.

As to the fourth ground, the law does not require respondent to mitigate the loss from appellant's refusal to pay the outstanding loan by seeking repayment from a stranger to the transaction. (*Valle de Oro Bank v. Gamboa* (1994) 26 Cal.App.4th 1686, 1690). As observed in *Vitagraph, Inc. v. Liberty Theaters Co.* (1925) 197 Cal. 694, 698-699, "[n]o case has been called to our attention wherein the rule as to the duty to minimize the damages has been applied to a situation in which the defendant's breach of duty consisted solely of the failure or refusal to pay a liquidated sum of money when due, and it may perhaps be doubted that the rule is applicable to such a case." Further, even if mitigation were appropriate, there was no evidence adduced by appellant that Ednaco had the ability to make good these "pledge checks." (See *id.* at p. 699 [the burden of proof is upon the defendant to prove the facts in mitigation of damages].)

C.     *The Trial Court Correctly Computed Pre-Judgment Interest*

In his sixth ground, appellant challenges the court's computation of pre-judgment interest. Specifically, appellant challenges the court's determination of when the oral contract was breached. The court found that on September 7, 2010, the appellant announced he would make no further payments on his loans as the date of the breach. The court then computed pre-judgment interest commencing three days later, on September 10, 2010. Appellant contends that the court ought to have used December 23, 2011, the date alleged in the complaint as the date when the full amount of the loans was due and owing.

The court was not required to use the date alleged in the complaint as the operative date for the breach of contract. Under Civil Code section 1440, if a party to an obligation gives notice to another, before the latter is in default, that he will not perform, and does

9

not retract such notice before the time at which performance is due, the other party is entitled to enforce the obligation. (See, e.g., *Singh v. Burkhart* (1963) 218 Cal.App.2d 285, 292-293.) Where, as here, substantial evidence supports the court's finding that appellant unequivocally refused to perform by making any more payments to respondent, the contract can be found to have been breached. (*McWilliams v. Holton* (1967) 248 Cal.App.2d 447, 452.) As appellant definitely and unconditionally repudiated any further obligations on his agreement with respondent on September 7, 2010, the court properly commenced the application of pre-judgment interest thereafter. (Civ. Code, § 3289, subd. (b).)

## DISPOSITION

We affirm the judgment. Respondent Saeid Kohandarvish is entitled to recover his costs on appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

JONES, J. [*]

We concur:

ALDRICH, Acting P. J.

LAVIN, J.

_____

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10